UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RESEARCH FRONTIERS INCORPORATED,

        Plaintiff,    **MEMORANDUM & ORDER**

 -against-         **18-CV-2939 (ST)**

PRELCO INCORPORATED,

        Defendants.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

 Plaintiff Research Frontiers Incorporated ("Plaintiff" or "RFI") filed its initial complaint with the Supreme Court of New York in the County of Nassau on April 1, 2018. Notice of Removal 1, ECF No. 1. Defendant Prelco Incorporated ("Defendant" or "Prelco") removed this case from the Supreme Court of New York to this court, on May 17, 2018, on the basis of Diversity Jurisdiction pursuant to 28 U.S.C. § 1332(a); Plaintiff is a Delaware corporation and Defendant is a Canadian corporation with its principal place of business in Quebec, and the amount in controversy requirement is met. *Id.*

 The parties engaged in settlement talks until October 9, 2018 without reaching a settlement. *See* Order dated October 9, 2018. The parties consented to jurisdiction by a magistrate judge on October 22, 2018, and the case was randomly reassigned to me on January 17, 2020. Consent to Jurisdiction by US Magistrate Judge, ECF No. 22. Parties' cross-motions for summary judgment have been fully submitted to this court on September 5, 2019. ECF Nos. 25-38.

 Based on the reasons explained below, this Court concludes that triable issues of fact exist in Plaintiff's breach of contract claim. Likewise, summary judgment is precluded by factual disputes in the record related to Defendant's waiver defense. Defendant's defense based on the

1

statute of limitations is also unavailing. Therefore, the parties' cross motion for summary judgment is DENIED. Lastly, Defendant's alternative motion for partial summary judgment on the issue of damages is also DENIED.

## BACKGROUND

### A. Factual Record

#### 1. Undisputed Facts

Plaintiff RFI developed SPD-SmartGlass, an electronic glass-tinting technology which can be used for light control on window glass. Pl. Mot. Sum. J, Ex. B ("License Agreement"), ECF No. 28-3; Harary Aff. ¶¶ 5-6, ECF No. 28-1. Plaintiff owns the intellectual property rights of the above-described technology. *Id*. On April 8, 2004, the parties entered into a written License Agreement, in which Plaintiff licensed the use of SPD-SmartGlass technology to Defendant who would manufacture and develop products using the licensed technology. *See* License Agreement at 1-2; Pl.'s Statement of Undisputed Material Facts, ("Pl.'s 56.1") ¶ 1, ECF No. 29; Def.'s Resp. to Pl's Statement of Material Facts ("Def.'s Resp. 56.1") ¶ 1, ECF No. 31-1.

Under Section 3.2 of the License Agreement, Defendant is obligated to pay the Minimum Annual Royalty payments ("MAR"), but the Agreement further provides that no MAR will be imposed as long as Defendant makes timely payment of all fees due under the License Agreement. Pl.'s Resp. Def.'s 56.1, ¶¶ 10-11.

> *. . . Regardless of whether LICENSEE is selling any Licensed Products, during the term of this Agreement LICENSEE agrees to pay LICENSOR an initial fee of $10,000 upon signing of this License Agreement and the non-refundable minimum royalties (in U.S. Dollars) specified below for each of the stated periods . . . Notwithstanding the foregoing, no minimum royalties with respect to the 2005 calendar year or any calendar year thereafter will be due and owing under Section 3.2 hereof if LICENSEE has made the timely payment of all amounts due under this License Agreement . . .*

*See* License Agreement, §3.2. In particular, the parties agreed that an initial fee in the total amount of $10,000 would be paid by Defendant to Plaintiff in two equal installments of $5,000. Pl's Resp. 56.1 ¶ 5; Def.'s Resp. 56.1 ¶ 5. The first of these installments was due within 10 days of License Agreement's effective date (April 8, 2008), and the second installment was due before July 1, 2004. *Id.*; License Agreement §3.3. Defendant paid the first installment on April 7, 2004. *Id.* ¶ 6. However, the parties dispute whether or not Defendant paid the second installment. Plaintiff offers the affidavit of its President and certain bank records in support of its claim. Pl.'s 56.1 ¶ 6. Defendant argues that the records do not conclusively show that it defaulted on the second installment. Def.'s Resp. 56.1 ¶ 6. To this date, Defendant has not made any royalty payments to Plaintiff. *Id.* ¶ 8.

The License Agreement contains the following non-waiver clause:

*Unless agreed to by the parties in writing to the contrary, the failure of either party to insist in any one or more instances upon the strict performance of any one or more of the provisions of this Agreement, or to exercise any right contained in this Agreement or provided by law, shall not constitute or be construed as a waiver or relinquishment of the performance of such provision or right or the right subsequently to demand such strict performance or exercise of such right, and the rights and obligations of the parties shall continue unchanged and remain in full force and effect.*

License Agreement, §14.4. Prior to 2017, Plaintiff did not send any invoice nor notice of default regarding Defendant's overdue initial fee payment and MAR. Pl.'s Resp. 56.1 ¶15; Def.'s Attorney Brooks Decl. ("Brooks Decl.") Ex. A at 4 (Harary Dep. 18:9-23), ECF No. 33-2. On April 25, 2017, Plaintiff sent its first notice to Defendant requesting payment of a total of $550,000, which amount consists of the accrued MAR and the initial fee. Pl.'s Resp. 56.1 ¶ 15. On May 24, 2017, Defendant responded by sending a $5,000 draft as the second installment and a written disclaimer that Defendant is "not suggesting or admitting its previous non-payment." *Id.* ¶ 17. Plaintiff, in this motion for summary judgment, decreased its demand to $300,000

3

which includes the unpaid MAR between January 2013 and January 2018, plus interest. Pl. Resp. 56.1 ¶ 20; Pl.'s Notice of Motion, ECF No. 28.

The terms of the License Agreement were to last for the duration of RFI's patents or the period of time that the technical information need be kept confidential, which is at minimum 20 years. *Id.* ¶ 3. According to the License Agreement, either party is free to terminate the License Agreement before the end of its term. *Id.* ¶ 4. However, the Licensee seeking to terminate is required to provide advance, written notice along with a written report describing the reasons for termination. Def. Mot. Sum. J. Ex. B ("License Agreement") § 10.2. Neither party attempted to terminate the agreement until February 15, 2019, at which time Defendant sent a Notice of Termination to Plaintiff. *See* Def.'s Resp. 56.1 ¶ 15; Def.'s Mem. of L. Ex. I ("Notice of Termination"), ECF No. 33-9; Pl. Resp. 56.1 ¶ 19.

2. Disputed Issues

Defendant disputes that it owes any initial fees or MAR to Plaintiff. Defendant disputes that the record evidence establishes its non-payment of the $5,000 initial fee balance. Defendant maintains that it did not have any MAR obligations, because (1) the record does not conclusively demonstrate its non-payment of the initial fees, and (2) in any case, Plaintiff knowingly and intentionally waived the MAR by not enforcing it for thirteen (13) years. In support of its position, Defendant presents an e-mail correspondence dated March 18, 2004, in which Joseph Harary (President, RFI) wrote to Yvan Thibault (Vice President, Prelco): The "license has no minimum royalty obligations unlike other licensees who pay guaranteed royalties during this market development stage." Def.'s 56.1 ¶ 1. Plaintiff objects to this evidence on grounds that the out-of-context reference is misleading, and that it constitutes extrinsic evidence inadmissible under the parole evidence rule. Pl.'s Resp. 56.1 ¶ 1; Pl.'s Opp. at 12.

4

Defendant also submits an e-mail correspondence between Michael LaPointe (Vice President, RFI) and Joseph Harary (RFI, President) dated July 22, 2004. In the e-mail, Harary asks LaPointe to remind Defendant of the overdue $5,000 second installment of the initial payment. In response, LaPointe suggests that RFI send a reminder but defer the payment until Defendant is able to begin trials to develop the product. Def.'s 56.1 ¶ 9; Def.'s Attorney Brooks Decl. ("Brooks Decl.") Ex. A at 7-8, ECF No. 33-2. Later at deposition, Harary did not remember whether a reminder had ever been sent to RFI after the e-mail correspondence. *See* Brooks Decl. Ex. A at 3 (Harary Dep. 14:16-15:4). Plaintiff objects to the relevance of this evidence. Pl.'s Resp. 56.1 ¶ 9.

On February 15, 2019, Defendant sent a Notice of Termination of SPD-Smart Window License Agreement. Def.'s 56.1 ¶ 19; Def.'s Mem of L., Ex. I ("Notice of Termination"), ECF No. 33-9. Plaintiff maintains that the Notice is defective as it does not contain a written report required per the termination clause: "[i]f LICENSEE decides to terminate this Agreement for any reason, LICENSEE shall provide LICENSOR, along with the aforementioned notice of termination, with a written report describing the reasons for such termination." Pl.'s Resp. 56.1 ¶ 19; License Agreement § 10.2.

**LEGAL STANDARD**

Summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") is only appropriate where admissible evidence in the record demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). Facts are material where it may "affect the outcome of the suit under the governing law . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To prevail on a summary judgment motion, the moving party must demonstrate, on the basis of

5

the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the non-movant, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Brady v. Colchester*, 863 F.2d 205, 210 (2d Cir. 1988)

To defeat a summary judgment motion properly supported by affidavits, the non-movant must offer, by affidavits, deposition, or other documentary evidence, specific facts demonstrating a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than "some metaphysical doubt as to the material facts." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (internal quotations omitted).

Where the moving party demonstrates that the nonmoving party's evidence is insufficient to establish its claim, the burden shifts to the nonmoving party to produce persuasive evidence to show that its claim is not "implausible." *See Brady v. Colchester*, 863 F.2d at 211 (internal citations omitted). Then, the court must evaluate the sufficiency of the nonmoving party's evidence and determine whether there exists sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). However, "courts must still proceed very cautiously." *Id.* "[I]f . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* (internal citations and quotations omitted). With these considerations in mind, we

6

turn to the argument raised by the parties and the evidence presented in support of their cross motion for summary judgment.

## DISCUSSION

### A. Plaintiff's Motion

1. Breach of the License Agreement

It its summary judgment motion, Plaintiff argues that the record evidence sufficiently proves the prima facie elements of its breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the agreement by plaintiff, (3) breach of the agreement by the defendant, and (4) damages. Pl.'s Mem. of L. at 8. Defendant opposes the motion, arguing that the evidence is not sufficient to establish a breach of the agreement by Defendant. *See generally* Def.'s Opp. Specifically, Defendant states that the record is inconclusive as to whether Defendant timely paid the initial fees. *Id*. at 3. Upon review of the records, this Court concludes that Plaintiff is precluded from summary judgment on this issue, because the record does not conclusively demonstrate Defendant's breach of the agreement.

Plaintiff, after searching its records, "determined conclusively" that Defendant never made the second $5,000 payment. Pl.'s Resp. 56.1 ¶ 7. Plaintiff's evidence consists of an affidavit of its President, Harary, who stated that Defendant did not pay the initial fee in full. Pl.'s Reply Br. at 5-6, ECF No. 32; Harary Aff. ¶ 20, ECF No. 28-1. Plaintiff claims that this evidence is corroborated by an internal e-mail exchanged between RFI's President and VP of Marketing, dated July 22, 2004, in which they discuss the overdue balance of Defendant's initial fee payment. Pl.'s Reply Br. at 6-7; Def.'s Opp. Ex. A at 8. Plaintiff also provides bank records which shows that Defendant sent one check in the amount of $5,000 issued on April 7, 2004. Browser Decl. Ex. H, ECF No. 36-2. However, the bank records only reflect financial

transactions between April and June 2004, and omits transaction history related to July 1, 2004 — the date that the second installment was due. *Id*. In opposing the motion, Defendant maintains that "neither [party] ha[s] located proof regarding whether or not the second installment of the initial payment was made." Def.'s Opp. at 3-4. Prelco's Vice President Yvan Thibault, testified at a deposition that he did not know if Defendant ever paid the second installment, while conceding that he is the person most likely to know if it had been paid. *Id*.

Parties therefore dispute whether the evidence in the record is sufficient to resolve whether Defendant breached the License Agreement by failing to pay the second installment in 2004. *See* Def.'s Opp. at 2-3 ("the essential breach in the Agreement is whether Prelco paid timely paid the balance of the initial fee, only then activating the MARs."). The only objective evidence dispositive of this issue are the bank records, but these are insufficient to conclusively prove whether Defendant failed to pay as the records do not include transactions from the month of July 2004. The other evidence in the record to support Plaintiff's claim consists of its President's statements in his affidavit and internal e-mail correspondence. Where, as here, the essential element of a claim depends on the credibility of a party's statement, it should be weighed by the jury or the fact finder at trial. *See also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Given that courts must proceed very cautiously in determining the sufficiency of the moving party's evidence and draw all reasonable inferences in favor of the nonmoving party, this Court denies Plaintiff's summary judgment motion.

### B. Defendant's Motion
1. Waiver

In its motion for summary judgment, Defendant claims that Plaintiff waived the payment of the second installment of initial fees and the MAR by staying silent for thirteen (13) years. Def.'s Mem. of L. at 5-8, ECF No. 35. Plaintiff's opposition points to the non-waiver provision in the License Agreement. Pl.'s Opp. at 6. This Court concludes that disputed facts in the record preclude summary judgment for Defendant on the issue of waiver.

Waiver is an equitable defense which may be heard within the trial court's discretion. *Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., No. 14-CV-6544(KAM)(GRB), 2018 U.S. Dist. LEXIS 51444, at *73 (E.D.N.Y. Mar. 27, 2018) (internal citations omitted). It is well settled under New York law that a "waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed." *Wyeth v. King Pharm., Inc*., 396 F. Supp. 2d 280, 290 (E.D.N.Y. 2005); *Capitol Records, Inc. v. Naxos of Am., Inc*., 372 F.3d 471, 482 (2d Cir. 2004) ("[A] claim of waiver requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.") (internal citations omitted). "A [w]aiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage." *Wyeth*, 396 F. Supp. 2d at 290 (internal citations and quotation marks omitted). However, "silence and inaction do create an implied waiver, where . . . there is proof that there was a voluntary and intentional relinquishment of a known and otherwise enforceable right." *Lan v. AOL Time Warner, Inc*., 2013 U.S. Dist. LEXIS 61574, at *9 (S.D.N.Y. Apr. 30, 2013) (internal citations and quotations omitted); *see also Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., 2018 U.S. Dist. LEXIS 51444 at *67-70 ("a party asserting equitable estoppel must also establish that the misleading conduct or silence led the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against

9

the alleged infringer."). Where a party alleges that a waiver is implied, it "is rarely established as a matter of law rather than as a matter of fact." *Wyeth*, 396 F. Supp. 2d at 290 (internal citations and quotation marks omitted). Also, under New York law, "the existence of a non-waiver clause in a contract does not by itself preclude the waiver of a provision of, or right under, the contract." *Id.*

Having examined the totality of the circumstances, this Court finds that the factual evidence in the record is disputed as to whether Plaintiff waived its right knowingly and intentionally. *Wyeth*, 396 F. Supp. 2d at 290 ("Whether there was a knowing and intentional waiver of rights is a factual question that we determine based on the totality of the circumstances."). On the one hand, the record contains evidence from which Plaintiff's intent to waive may be inferred. For example, in an email dated July 22, 2004, RFI's President instructed its VP of Marketing, LaPointe to send a reminder to Prelco that the $5,000 second payment is overdue. Brooks Decl. Ex. A at 7-8, ECF No. 33-2. In response to this email, LaPointe wrote, "I would prefer to remind them [Prelco] that it [second installment] is due, but indicate that due to the circumstances we will defer this payment . . ." *Id*. Later at deposition, Harary testified that he did not remember whether a reminder had ever been sent to RFI. *Id*. Ex. A at 3 (Harary Dep. 14:16-15:4). Presented with these facts, a reasonable trier of fact may infer that Plaintiff had been aware of Defendant's non-payment but knowingly waived it. On the other hand, a reasonable trier of fact may arrive at the exact opposite conclusion – that Harary and LaPointe fully intended to enforce the initial fee payment obligation at a later time. Since reasonable minds may differ, the issue would be best reserved for trial.

There are additional disputed facts in the record surrounding the issue of waiver. Plaintiff conceded that it had a corporate policy "not [to be] vocal about outstanding fees" until its

10

licensees develops a commercial product, because Plaintiff understands that "a viable commercial product is more valuable to Research Frontiers than minimum annual royalties." Pl.'s Opp. at 9; Harary Aff. ¶ 25, ECF No. 28-1 ("[RFI] recognizes that, oftentimes its licensees take years to develop, market and sell products using the licensed technology. Those sales . . . are far more lucrative than minimum royalty fees. Thus, as a corporate policy, Research Frontiers has generally not sent invoices to licensees . . ."). The existence of a company's policy not to enforce its rights may establish an implied waiver. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., No. 14-CV-6544(KAM)(GRB), 2018 U.S. Dist. LEXIS 51444, at *77-78 (E.D.N.Y. Mar. 27, 2018) (finding that the record evidence establishes the existence of a corporate policy of not enforcing its patent rights, and holding that such evidence precludes summary judgment on the issue of implied waiver). On the other hand, this position is contradicted by the non-waiver clause in the License Agreement which explicitly sets forth, "the failure of either party to . . . exercise any right contained in this Agreement or provided by law, shall not constitute or be construed as a waiver or relinquishment . . ." License Agreement, §14.4; *see also Wyeth v. King Pharmaceuticals, Inc*., 396 F. Supp. 2d at 290 (holding that under New York law, "the existence of a non-waiver clause in a contract does not by itself preclude the waiver of a provision of, or right under, the contract."). Based on these countervailing facts in the record, this Court concludes that a genuine factual dispute is created as to whether Plaintiff waived its right to enforce the contract. Therefore, Defendant's motion for summary judgment on this issue is DENIED.

    2.  Statute of Limitations

Defendant seeks dismissal of this case as the statute of limitations for the Plaintiff's claim expired in 2010. Defendant argues that, since Plaintiff's breach of contract claim is predicated

upon the Defendant's alleged failure to make the initial fee payment, the 6-year statute of limitations period began to run from July 1, 2004 — the date that the initial payment was due. Def.'s Mem. of L. at 9-10. This Court disagrees. Assuming that Defendant breached the License Agreement by failing to pay the initial fee, it is subject to the MAR, default of which payments creates a new cause of action each year.

Under the License Agreement, Defendant was obligated to pay the MAR, unless it paid the initial payment fee on time. License Agreement §3.2 ("[Prelco] pay Licensor [RFI] an initial fee of $10,000 upon signing of this License Agreement and the non-refundable minimum royalties specified below . . . Notwithstanding the foregoing, no minimum royalties . . . will be due . . . if Licensee has made the timely payment of all amounts due under this License Agreement"). Defendant concedes that the License Agreement "required Prelco to timely pay an initial fee of $10,000" and that a failure to make timely payment activates the MARs. Def.'s Opp. at 2-3 ("the essential breach in the Agreement is whether Prelco paid timely paid the balance of the initial fee, only then activating the MARs."). Assuming that Defendant did not pay the initial fee on time, it would have activated the MAR. Consequently, the MAR payment would have been due on January 31, 2005. Pl.'s Resp. 56.1 ¶ 12. In each of the subsequent years, Defendant's failure to pay the MAR would have created a new cause of action.

Under New York law, royalty payments are treated just like installment contracts, and each default on royalty payments constitutes a new cause of action. *See Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) (deeming each instance of failure to pay royalties as "a distinct harm giving rise to an independent claim for relief."); *see also Beram v. Ceaco, Inc.*, 219 F. Supp. 3d 274, 280 (D. Mass. 2016) ("A contract that provides a continuing obligation to pay royalties can be considered an installment contract.); *Ediciones Quiroga, S.L. v. Fall River Music*, 93 Civ.

12

3914 (RPP), 1995 U.S. Dist. LEXIS 8439, at *3 (S.D.N.Y. June 16, 1995) ("Under New York law, in cases involving installment contracts, a new and distinct cause of action accrues on each default or failure to pay."); *Cadlerock, L.L.C. v. Renner*, 72 A.D.3d 454, 898 N.Y.S.2d 127, 128 (N.Y. App. Div. 2010).[1] Therefore, Plaintiff's breach of contract claim, based on Defendant's failure to pay MARs from 2013 through 2018, is not time-barred.

### C. Defendant's Alternative Motion for Partial Summary Judgment

In the alternative, Defendant moves for partial summary judgment on the issue of damages, and requests this Court to declare that the License Agreement was terminated on February 15, 2019. Def.'s Mem. of L. at 13. It is undisputed that Defendant has the right to terminate under the License Agreement:

> *LICENSEE may terminate this Agreement effective as of December 31, 2009 or as of any anniversary thereof by giving LICENSOR prior notice thereof unless sooner terminated as hereinafter provided. Such notice shall be in writing and shall be given between 60 and 90 days prior to the effective date for which such termination is to be effective. If LICENSEE decides to terminate this Agreement for any reason, LICENSEE shall provide*

---

[1] Relying on *Bulova Watch Co. Inc. v. Celotex Corp.*, 46 N.Y.2d 606 (1979), Defendant contends that its failure to pay MAR is inseparable from the alleged non-payment of the $5,000 initial fee balance, and as such, the statute of limitations runs from the due date of the initial fee. *Id*. The facts and reasoning in *Bulova* is inapplicable to the case at hand, as *Bulova* deals with statutes of limitations issues pertaining to two distinct promises in a contract. At issue in *Bulova* was whether a buyer of roof installation services may bring an action against the roof materials supplier 20 years after the date of sale for claims based on a breach of implied warranty of fitness for use and a breach of 20-year guarantee pertaining to the roof's repair. *Id*. Deeming the breach of implied warranty of fitness claim to be untimely, the court explained that the warranty relates only to the service related to the installation of the roof, whereas the bond guarantee obligation applies to the performance of services (including repairs) over a 20-year span of time after the roof installation. *Id*. Therefore, the court concluded that the statute of limitations runs "separately for the damages occasioned each time a breach of the obligation to repair the bonded roof [occurs.]" within that time period. *Bulova Watch Co. v. Celotex Corp*., 46 N.Y.2d 606, 611, 415 N.Y.S.2d 817, 820, 389 N.E.2d 130, 132 (1979).
  *Bulova* bears no resemblance to the facts of this case, nor does its outcome help Defendant's case. Bulova's construction agreement contemplated two separate promise to begin with: a promise to install the roof and a promise to repair the roof over 20 years warranting a bifurcated analysis for purposes of the statute of limitations. Here, the RFI-Prelco License Agreement contained one promise (i.e., licensed use of a technology) with two options to pay — MAR or timely payment of initial fees of $10,000. Assuming that Defendant did not pay the initial fees, it activated MARs and is subject to a breach of contract claim based on its default on MAR payments.

> LICENSOR, along with the aforementioned notice of termination, with a written report describing the reasons for such termination.

*See* License Agreement at 12 (§10.2), ECF No. 33-3. It is also undisputed that on February 15, 2019, Defendant sent a letter to Plaintiff entitled, "Notice of Termination of SPD-Smart Window License Agreement Between Research Frontiers Incorporated and Prelco Inc." Brooks Decl. Ex. I ("Notice"), ECF No. 33-9; Pl. Resp. 56.1 ¶ 19. In the Notice, Defendant stated: "Written Report for Reason for Termination: Upon information and belief the Agreement is invalid upon its terms." However, the parties have diverging interpretations of the "written report" requirement in the termination clause and dispute whether Defendant's one sentence-long statement in the Notice complies with the requirement. *See* Brookls Decl. Ex. A (Harary Dep. 23:5-17).

Summary judgment is only appropriate if the evidence is so one-sided that there exists no genuine issue of material fact. *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011). The written report requirement in this License Agreement is susceptible to more than one interpretation. On the one hand, it may require a report containing exhaustive reasons for termination submitted "along with" the notice in the form of an additional document, while on the other hand, the brief statement in the Notice letter may satisfy the requirement. Whether a party's method of terminating the contract was valid may raise a dispute of fact best reserved for trial. *See Bonnie & Co. Fashions v. Bankers Tr. Co.*, 945 F. Supp. 693, 717-18 (S.D.N.Y. 1996) (denying summary judgment regarding the effectiveness of a termination notice, where the contract's termination clause required written notice transmitted by registered or certified mail, and the terminating party transmitted written notice by fax). Therefore, this Court denies Defendant's partial summary judgment motion. *See Bonnie & Co. Fashions v. Bankers Tr. Co.*, 945 F. Supp. 693, 717 (S.D.N.Y. 1996) (finding that the termination cause listing the methods of transmitting

14

termination notice is ambiguous "because it is plainly susceptible to more than one interpretation.").

## CONCLUSION

Based on the foregoing reasons, this Court finds that triable issues of fact exist as to the Plaintiff's breach of contract claim. Likewise, disputed facts exist in the record related to Defendant's waiver defense. Therefore, the parties' cross motion for summary judgment is DENIED. This Court also declines to dismiss the case based on Defendant's statute of limitations defense. Lastly, Defendant's alternative motion for partial summary judgment on the issue of damages is also DENIED.

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
November 17, 2020